UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re

IVANO DiPIETRANTONIO,

                Debtor.

Case No. 12-33921

Chapter 7

_____

A-1 SERVICES, INC.,

                Plaintiff,

v.

IVANO DiPIETRANTONIO,

                Defendant.

Adversary Proceeding No. 12-2949

_____

ASSURED POWER, INC.,

                Plaintiff,

v.

IVANO DiPIETRANTONIO,

                Defendant.

Adversary Proceeding No. 12-2950

_____

MEMORANDUM DECISION ON PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT
_____

      The plaintiffs, A-1 Services, Inc., and Assured Power, Inc., filed adversary proceedings under 11 U.S.C. § 523(a)(4), seeking determinations that the obligations owed by the debtor were excepted from discharge. The plaintiffs moved for summary judgment on the grounds that Ivano DiPietrantonio breached his fiduciary duties under Wisconsin's "theft by contractor" statute, Wis. Stats. § 779.02(5), and the resulting debt was therefore nondischargeable under 11 U.S.C. § 523(a)(4). The defendant opposed the motions for summary judgment, and both parties filed

briefs in support of their respective positions.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and the Court has jurisdiction under 28 U.S.C. § 1334. The following constitutes the Court's findings of facts and conclusions of law pursuant to Fed. R. Bankr. P. 7052. For the reasons stated below, the plaintiffs' motions for summary judgment are denied.

## BACKGROUND

Unless otherwise noted, the following facts are not in dispute. In the Spring and Summer of 2008, Ivano DiPietrantonio, as sole owner and manager of Constar Engineering Institute, LLC, registered as Const-Engr-Inst, LLC[1] (known collectively as "CEI"), hired A-1 Services, Inc. ("A-1") and Assured Power, Inc. ("Assured") as subcontractors on projects for which CEI was the general contractor. On July 2, 2009, Assured and A-1 filed causes of action in state court against Mr. DiPietrantonio and CEI for breach of contract and for violations of Wisconsin's Theft by Contractor Statute, section 779.02, Wis. Stat. At issue in the state court action was payment of two of the projects: a CITGO station on Farwell and a CITGO station on Lisbon for which CEI received full payment for the subcontracted work and failed to remit payment to Assured and A-1. CEI also sued Assured and A-1, and their owner Terry Martinez, in an action involving these two and another project. The two state court actions were subsequently consolidated.

After Mr. DiPietrantonio's attorney withdrew from representation, and the debtor failed to disclose discoverable material and missed a court ordered hearing, the state court struck CEI and DiPietrantonio's answers to the theft by contractor complaints and dismissed the separate

---

[1] The debtor signed the contract with the project owner on "Const Engr Inst LLC" letterhead, in his capacity of principal of "Construction Enterprizes, Inc., General Contractors."

case against Assured, A-1, and Mr. Martinez. In striking Mr. DiPietrantonio's answers and affirmative defenses, the state court deemed A-1 and Assured's amended complaints admitted, establishing the following facts for purposes of the consolidated default judgment.

CEI entered into a written contract with Gurdev Singh d/b/a Vicky Quick Mart, LLC, pursuant to which it would be the general contractor for construction improvements at Mr. Singh's properties located in Milwaukee ("CITGO Farwell" and "CITGO Lisbon"). CEI subcontracted the refrigeration and HVAC work of the CITGO Farwell project to A-1, and the electrical work of the project to Assured. A-1 and Assured invoiced CEI for the work they performed. To the satisfaction of the owner, Mr. Singh, both A-1 and Assured completed the work for which they were sub-contracted. Mr. Singh paid CEI for its general contract work on the project, and those monies paid constituted a trust fund pursuant to section 779.02(5), Wis. Stat. DiPietrantonio, acting on behalf of CEI, refused to pay the remainder of the amount due for the subcontracted services rendered by A-1 and refused to make any payment to Assured. Mr. DiPietrantonio "knew the use of the trust fund monies [was] without the consent and contrary to the authority of" the project owner, and he "used the trust fund monies with the intent to convert it to his own use or the use of another." (Amended Complaint ¶¶ 23, 24, 48, 49, Milwaukee County Circuit Court Case No. 09CV10075; Amended Complaint ¶ 20, 21, 44, 45 Milwaukee County Circuit Court Case No. 09CV10074). Furthermore, to the extent Mr. DiPietrantonio "was working on behalf of one of his entities, under Wisconsin Theft by Contractor law, he [was] personally responsible for the misappropriations of the trust fund." (Amended Complaint ¶¶ 27, 52 Milwaukee County Circuit Court Case No. 09CV10075; Amended Complaint ¶¶ 24, 48 Milwaukee County Circuit Court Case No. 09CV10074). Mr. DiPietratonio was the only owner

and member of CEI.

The state court entered a consolidated order for judgment under Wis. Stat. § 895.446 against Mr. DiPietratonio and his entities for $47,161.92 in damages, with attorney's fees of $7,236.48 and costs of $274.00 to Assured; and $91,350.18 in damages, with attorney's fees of $7,236.48 and costs of $274.00 to A-1. Mr. DiPietrantonio did not appeal the judgment.

## ARGUMENTS

The plaintiffs argue the state court's findings and imposition of damages under section 895.446, Wis. Stat., establish that the debtor had the requisite intent to convert the trust funds for his own use, meeting the elements of defalcation under 11 U.S.C. § 523(a)(4). The plaintiffs urge the Court to adopt the default exception to the "actually litigated" requirement of issue preclusion because the debtor participated in the state court actions.

The defendant argues the doctrine of issue preclusion does not apply because the underlying issues were never actually litigated in state court. Additionally, the debtor's intent remains in dispute, as do the amounts owed, since Mr. DiPientrantonio maintains that he refused to remit payment to the plaintiffs because they were indebted to him for more than they were owed.

## DISCUSSION

To prevail on a motion for summary judgment the moving party must show there is no genuine issue of material fact and he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine if there is a genuine issue of material fact, all facts are construed in the light most favorable to the non-moving party. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). Additionally, all reasonable inferences are drawn in favor of that party. *Id*. However, the

4

non-movant must set forth "specific facts showing that there is a genuine issue for trial" which requires more than "just speculation or conclusory statements." *Id*. at 283 (citations omitted).

The doctrine of issue preclusion prevents relitigation of an issue of fact or law previously decided in a judicial proceeding provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in the earlier proceeding. *Allen v. McCurry*, 449 U.S. 90, 94-95, 101 S.Ct. 411, 414-415 (1980). First, as a matter of full faith and credit a federal court must apply the forum state's law of issue preclusion when it determines the preclusive effect of a state court judgment. 28 U.S.C. § 1738; *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 136 F.3d 1134, 1136 (7th Cir. 1998). Additionally, the forum state's law of issue preclusion applies in determining the dischargeability of debt. *Bukowski v. Patel*, 266 B.R. 838, 842 (E.D. Wis. 2001) (citing *Matter of Bulic*, 997 F.2d 299, 304 n. 6 (7th Cir. 1993)). Therefore, whether issue preclusion applies must be determined according to Wisconsin law.

In Wisconsin courts, issue preclusion is a two-step analysis. The first step is to determine whether a litigant against whom issue preclusion is asserted is in privity with a nonparty or has sufficient identity of interests to comport with due process. *Paige K.B. ex rel. Peterson v. Steven G.B.*, 226 Wis. 2d 210, 224, 594 N.W.2d 370 (1999). The debtor was a party to the previous actions, so privity is not a question the Court needs to address. The next step in issue preclusion analysis is whether applying issue preclusion comports with principles of fundamental fairness. This is generally a discretionary decision, although some of the factors a court is to consider in determining fairness present a question of law. *Paige K.B.*, 226 Wis. 2d at 225.

The factors that courts may consider when undertaking the second step of issue preclusion are: (1) could the party against whom preclusion is sought, as a matter of law, have

obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action? *Michelle T. By Sumpter v. Crozier*, 173 Wis. 2d 681, 689, 495 N.W.2d 327 (1993) (footnote omitted).

Clearly, the debtor could have, as a matter of law, obtained review of the state court judgment. Additionally, the burden of proof before the state court under section 895.446(2), Wis. Stat. – preponderance of the evidence – is the same as required in this adversary proceeding. *Matter of Bero*, 110 F.3d 462, 465 (7th Cir. 1997) ("[T]o prove that a debt is nondischargeable, the creditor bears the burden of proof by a preponderance of the evidence.").

Nevertheless, an issue must be actually litigated and determined by a valid final judgment and the determination must be essential to the judgment before it is conclusive in a subsequent action whether on the same or a different claim. *Landess v. Schmidt*, 115 Wis. 2d 186, 197, 340 N.W.2d 213, 219 (Ct. App. 1983) (citing Restatement (Second) of Judgments § 27 (1982)). When a judgment was procured by default, issue preclusion ordinarily does not apply because none of the issues were actually litigated. *Heggy v. Grutzner*, 156 Wis. 2d 186, 193, 456 N.W.2d 845, 849 (Ct. App. 1990). That exception is flexible and in some situations preclusion is still appropriate. *Id*. This is not one of those. While the debtor was initially involved in the state

6

court cases, he never testified and, more importantly, after the debtor's answers were struck, the plaintiffs did not actually present their cases in chief to the state court. Because the matters were not actually litigated, issue preclusion would be inappropriate.

Oddly enough, preclusion does apply to the *amount* of damages. *See In re Back Bay Restorations, Inc.*, 118 B.R. 166, 169-70 (Bankr. D. Mass. 1990) (bankruptcy courts bound by prior judgments of amount of resulting damages). As defined in the Bankruptcy Code, "'debt' means liability on a claim." 11 U.S.C. § 101(12). The plaintiffs' judgment unarguably is a claim in the bankruptcy case; it is a final and unappealed judgment. While the debtor asserts that the plaintiffs owe him money, any counterclaim and the separate action were dismissed, and the alleged obligation is not listed as an asset on the debtor's schedules. Since the full amount of a judgment is a valid claim, the total award cannot be modified, and the only issue before this Court is whether it is nondischargeable.

Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The elements required to establish a nondischargeable debt for defalcation under this section are: (1) the existence of a trust; (2) the debtor is a fiduciary of that trust; and (3) fraud or defalcation by the debtor while acting as a fiduciary of the trust. In this case, Wisconsin's theft by contractor statute provides the requisite trust and the debtor was a fiduciary of that trust.

The theft by contractor provisions of sections 779.02(5) and 779.16, Wis. Stats., create a trust fund for sums paid by a property owner to a general contractor for the benefit of subcontractors and material suppliers. *Kraemer Bros., Inc. v. Pulaski State Bank*, 138 Wis. 2d 395, 399-400, 406 N.W.2d 379, 381 (1987). Section 779.02(5) provides, in relevant part:

7

> Theft by Contractors. [A]ll moneys paid to any prime contractor or subcontractor by any owner for improvements, constitute a trust fund only in the hands of the prime contractor or subcontractor to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor, services, materials, plans, and specifications used for the improvements, until all the claims have been paid .... The use of any such moneys by any prime contractor or subcontractor for any other purpose until all claims ... have been paid in full or proportionally in cases of a deficiency, is theft by the prime contractor or subcontractor of moneys so misappropriated and is punishable under s. 943.20.

Wis. Stat. § 779.02(5). It is not a defense that CEI, and not the defendant in his individual capacity, was the "fiduciary" of the "trust." The statute provides:

> If the prime contractor or subcontractor is a corporation, limited liability company, or other legal entity other than a sole proprietorship, such misappropriation also shall be deemed theft by any officers, directors, members, partners, or agents responsible for the misappropriation.

Wis. Stat. § 779.02(5); *see also In re Dinkins*, 327 B.R. 918, 923 (Bankr. E.D. Wis. 2005) ("If an individual debtor is an officer, director, or agent responsible for misappropriation by an entity, the debt will be excepted from the discharge of the individual."). CEI was a limited liability company and the debtor was a sole owner and operator of the company at the time of the relevant events. Therefore, he was a fiduciary of the trust in the same way that his company, CEI, was a fiduciary of the trust. *Cf. Burmeister Woodwork Co., Inc. v. Friedel*, 65 Wis. 2d 293, 222 N.W.2d 647, 650 (1974); *Capen Wholesale, Inc. v. Probst*, 180 Wis. 2d 354, 509 N.W.2d 120, 124-125 (1993) (officer or director is personally liable for violations of § 779.02(5) regardless of whether that officer or director personally benefitted from the misapplied trust funds).

Until recently, this Court had traditionally applied a per se approach to violations of the state theft by contractor statute, without regard to any precise lack of care exercised by the debtor. *See In re Carlson*, 456 B.R. 391 (Bankr. E.D. Wis. 2011); *In re Ecker*, 400 B.R. 669,

8

673 (Bankr. E.D. Wis. 2009)*; In re Dinkins*, 327 B.R. 918, 923 (Bankr. E.D. Wis. 2005). This Court previously found guidance in the Seventh Circuit's decision, *Matter of Thomas*, 729 F.2d 502 (7th Cir. 1984), wherein a similar state statute relating to public works was interpreted. The *Thomas* court held that the general contractor satisfied its burden of establishing nondischargeability by showing it paid the debtor subcontractors for landscaping on a project and that "the defalcation by defendants occurred when they [instead] used this trust fund for their own purposes," in turn causing the plaintiff general contractor to complete the work for an additional cost. *Id*. at 505-06. This Court has also been cognizant of the tension created between the *Thomas* holding and the Seventh Circuit's more recent proclamations in *In re Berman*, 629 F.3d 761, 765 n. 3 (7th Cir. 2011), finding "that defalcation requires something more than negligence or mistake, but less than fraud."

In *Bullock v. Bank Champaign, N.A.*, __ U.S. __, 133 S.Ct. 1754, 1759, 185 L.Ed.2d 922 (2013), the Supreme Court answered the question of whether defalcation includes a scienter requirement in the affirmative: "where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term ["defalcation"] requires an intentional wrong." The Supreme Court vacated and remanded in *Bullock* because the Eleventh Circuit applied an "objective reckless [ness]" standard in determining whether the debtor engaged in defalcation while acting as a fiduciary. *Id*. at 1761 (describing standard articulated in *Bullock* as "heightened" relative to objective recklessness test).

Clearly, the Seventh Circuit's *Thomas* decision is not consistent with *Bullock* and is now obsolete. Likewise, the Seventh Circuit's precedents set a lower level of intent than that described in *Bullock*. *See Berman*, 629 F.3d at 765 n. 3 ("Defalcation can be distinguished from

9

fraud and embezzlement on the basis that subjective, deliberate wrongdoing is not required to establish defalcation, though some degree of fault is required."). *Bullock* holds that "defalcation" – just like "fraud" – requires a deliberate or intentional wrong and "include[s] as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent." 133 S.Ct. at 1759-60 (describing degree of recklessness akin to actual knowledge of wrongdoing).

The plaintiffs list several cases in which a defendant's wrongdoing was sufficiently developed by his conduct before trial such that issue preclusion as to his culpability was applied. That is not the case here. In his affidavit dated September 30, 2013, Mr. DiPietrantonio explains the reasons for his default in the state court. The circumstances stated (withdrawal of his attorney and an accident on the day he was to be in court) are sufficient to put into question whether the defendant intentionally avoided his opportunity to litigate his liability. Therefore, the matter was not "actually litigated."

In order to make a determination in this case as to nondischargeability under section 523(a)(4), *Bullock* requires that the Court make a finding regarding the debtor's state of mind while acting in a fiduciary capacity. Because this type of determination is ill-suited for summary judgment, the plaintiffs' motions are denied for this reason, as well. A separate order consistent with this decision will be entered.

November 5, 2013

Margaret Dee McGarity
United States Bankruptcy Judge